**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**DR. WILLODENE ROBINS,**

                      **Plaintiff,**              **07 Civ. 3599**
                                                   **(JGK) (KNF)**

          **- against -**

                                                   <u>**MEMORANDUM OPINION AND**</u>
**NEW YORK CITY BOARD OF EDUCATION,**              <u>**ORDER**</u>

                      **Defendant.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

        The plaintiff, Dr. Willodene Robins (the "plaintiff"), a
retired high school science teacher, brings this action against
her former employer, the New York City Board of Education (the
"defendant" or "Board of Education").  The plaintiff alleges
that the defendant discriminated against her on the basis of
race and age in violation of Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et
seq.  The plaintiff also asserts claims of retaliation and
hostile work environment in violation of Title VII and the ADEA.
The defendant moves pursuant to Federal Rule of Civil Procedure
56 for summary judgment dismissing all of the plaintiff's
claims.

I

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Adams v. City of New York, No. 08 Civ. 5263, 2010 WL 743956, at *1 (S.D.N.Y. Mar. 2, 2010).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Adams, 2010 WL 743956, at *1.

II

The following facts are undisputed unless otherwise noted.

Dr. Robins is African-American and is currently 56 years of age.  (Def.'s 56.1 Stmt ¶ 2.)  She is a former high school science teacher and was employed by the Department of Education from 1978 to 2008.  (Def.'s 56.1 Stmt ¶ 4; Barnett Decl. Ex. B at 179.)

In 2000, the plaintiff accepted an assignment as an Interim Acting Assistant Principal of Science at Riverdale-Kingsbridge Academy ("RKA") and held this position for the 2000-2001 school year.  (Def.'s 56.1 Stmt ¶ 9.)  This position was temporary and in order for Dr. Robins to have obtained the position permanently, she had to complete the process pursuant to the Chancellor's Regulation C-30, which governs the selection of DOE supervisors and administrators.  (Def.'s 56.1 Stmt ¶¶ 10-11.)  The plaintiff completed the C-30 process, but was not appointed to the permanent position.  (Def.'s 56.1 Stmt ¶¶ 12-13.)  The assistant principal of science position was awarded to Daniella Phillips.  (Def.'s 56.1 Stmt ¶ 14.)  Dr. Robins continued to teach at RKA.  (Def.'s 56.1 Stmt ¶ 15.)  During the 2002-2003 school year, Dr. Robins was on sabbatical and did not teach.  (Def.'s 56.1 Stmt ¶ 17.)  For the 2003-2004 school year, Dr.

4

Robins received a "satisfactory" annual rating.  (Def.'s 56.1 Stmt ¶ 21; Barnett Decl. Ex. E.)

During the 2004-2005 school year, Dr. Robins failed to report a student's allegation of unconsented sex.  A ninth grade female student alleged that she told Dr. Robins on April 5, 2005, that on April 1, 2005, the student had been forcibly removed from the school building by a tenth grade boy and raped by him in an adjacent park.  (Barnett Decl. Ex. F.)  Dr. Robins disputes that the student reported that she had been raped, and alleges that the student wanted to know about cheating and sex and if it was still considered "cheating if she didn't really want to do it."  (Pl.'s Stmt ¶¶ 10-11.)  On April 8, 2005, the plaintiff reported the incident to Assistant Principal Amanda Lurie.  (Pl.'s Stmt ¶ 13.)

On April 14, 2005, Dr. Robins met with Principal Phillips and Paula Lenahan, the United Federation of Teachers ("UFT") chapter chair.  At the meeting, Dr. Robins stated that she tried to contact Dean Orozco-Rosario several times to discuss the student's comments, but that the Dean was out of the office.  (Barnett Decl. Ex. F.)  There is no evidence of messages being left for Dean Orozco-Rosario.  (Def.'s 56.1 Stmt ¶ 25; Barnett Decl. Ex. F.)  Dr. Robins also stated that she did not make any efforts to notify anyone else about the student's rape allegation.  (Barnett Decl. Ex. F.)  It is school policy that

teachers must report allegations of rape.  (Def.'s 56.1 Stmt ¶ 31.)

The plaintiff's conduct during the 2004-2005 school year resulted in her receiving an overall "unsatisfactory" rating on her Annual Professional Performance Review and Report due to unsatisfactory performance in the areas of "[a]ttention to pupil health, safety and general welfare" and "[a]ttention to records and reports."  (Barnett Decl. Ex. I.)  The report noted: "It is essential that any knowledge of alleged or suspected abuse, rape, or criminal activity be reported to appropriate school personnel in a timely and thorough manner."  (Barnett Decl. Ex. I.)

At the start of the 2005-2006 school year, the plaintiff criticized the school opening for being allegedly chaotic and disorganized.  (Pl.'s Stmt ¶ 26; Barnett Decl. Ex. B at 184-86.) The plaintiff suggested that Principal Phillips should be fired for her handling of the school opening and voiced this criticism at department meetings and to other colleagues.  (Pl.'s Stmt ¶ 26; Barnett Decl. Ex. B at 184.)  There is no evidence that Principal Phillips learned of Robins' comments.  (See Barnett Decl. Ex. B at 186.)

In November 2005, Assistant Principal Anthony Tamalonis observed the plaintiff's Living Environment class and found the lesson to be "unsatisfactory."  (Def.'s 56.1 Stmt ¶ 47; Pl.'s

Stmt ¶ 28; Barnett Decl. Ex. K.)  In his observation report,
Assistant Principal Tamalonis outlined various deficiencies in
the plaintiff's teaching of the class, including the lack of
academic rigor in the lesson.  (Barnett Decl. Ex. K.)  According
to Dr. Robins, she interpreted Assistant Principal Tamalonis's
use of the word "rigor" as a code word for "nigger."  (Barnett
Decl. Ex. B at 203-04.)  Dr. Robins also claims that Assistant
Principal Tamalonis's classroom visits were unusual and that
they did not occur as frequently prior to her failure to report
the alleged rape.  (Pl.'s Stmt ¶ 28.)  The plaintiff alleged
that Assistant Principal Tamalonis came "gunning" for her and
that he was in her classroom constantly.  (Def.'s 56.1 Stmt ¶
50; Barnett Decl. Ex. B at 116.)

     In December 2005, there were two incidents of laptop
computer theft in the plaintiff's classroom.  (Def.'s 56.1 Stmt
¶ 51; Barnett Decl. Ex. L; Pl.'s Stmt ¶ 29.)  On Friday,
December 2, 2005, Dr. Robins locked a laptop computer and an LCD
projector in her teacher's closet at the end of the day, but
discovered on December 5, 2005 that the laptop computer was
missing, although the LCD projector was still there.  (Def.'s
56.1 Stmt ¶ 52; Pl.'s Stmt ¶ 29; Barnett Decl. Ex. L.)  On
December 5, 2005, Dr. Robins locked thirty-five laptop computers
into a laptop cart and hid the key to the cart in her classroom.
(Def.'s 56.1 Stmt ¶ 53; Pl.'s Stmt ¶ 29; Barnett Decl. Ex. L.)

The next day, December 6, 2005, Robins was unable to find the hidden key. (Def.'s 56.1 Stmt ¶ 53; Barnett Decl. Ex. L.) When the laptop cart was eventually unlocked, nine laptops worth $11,610 were missing. (Def.'s 56.1 Stmt 53; Barnett Decl. Exs. L, M.) The defendant alleges that Dr. Robins took no steps to lock the cart's key in a secure location. (Def.'s 56.1 Stmt ¶ 53; Barnett Decl. Ex. L.) Dr. Robins claims that the classroom door was locked and the key was hidden. (Pl.'s Stmt ¶ 29.)

On December 9, 2005, Principal Phillips, Assistant Principal Tamalonis, and Ms. Lenahan met with Dr. Robins to discuss these two theft incidents. Principal Phillips reminded Dr. Robins that RKA's teacher handbook and training addressed the importance of and protocol for securing A/V equipment and laptop computers. (Def.'s 56.1 Stmt ¶ 55; Barnett Decl. Exs. L, N.) At this meeting, it was also noted that Dr. Robins' security awareness should have been heightened by the laptop theft on the fifth of December and a June 17, 2005 meeting to discuss a laptop theft in the plaintiff's classroom during the previous school year. (Def.'s 56.1 Stmt ¶ 56; Barnett Decl. Ex. L.) Dr. Robins said that she felt she was under an extreme amount of pressure, and that she was upset about the laptop thefts. (Pl.'s Stmt ¶ 30.) She also stated that she felt violated at the meeting with Principal Phillips, Assistant Principal Tamalonis, and Ms. Lenahan. (Pl.'s Stmt ¶ 30.)

In light of the three incidents of laptop theft, Principal
Phillips decided to suspend indefinitely by the plaintiff and
her students the use of laptop computers.  (Def.'s 56.1 Stmt ¶
56; Barnett Decl. Ex. L.)   Dr. Robins was also warned that the
laptop thefts could lead to further disciplinary action,
including an unsatisfactory rating and termination.  (Barnett
Decl. Ex. L.)

On April 4, 2006, Principal Phillips and Aspiring Principal
David Donovan informally observed Dr. Robins' Bioethics class.
(Def.'s 56.1 Stmt ¶ 57; Pl's Stmt ¶¶ 45-46; Barnett Decl. Ex.
O.)  During this class, Dr. Robins showed the movie "John Q,"
which was rated PG-13 and included profanity and violence.
(Def.'s 56.1 Stmt ¶ 58; Pl.'s Stmt ¶ 45; Barnett Decl. Ex. O.)
Principal Phillips also observed that students did not have
paper, notebooks, or journals at their desks.  (Def's 56.1 Stmt
¶ 58; Barnett Decl. Ex. O.)

On April 6, 2006, Principal Phillips and Ms. Lenahan met
with Dr. Robins to discuss the informal observation of Dr.
Robins' Bioethics class on April 4, 2006.  (Def.'s 56.1 Stmt ¶
57; Barnett Decl. Ex. O.)   Principal Phillips reminded Dr.
Robins that RKA's handbook and a September 2005 training
addressed the importance of using G-rated videos with a clear
instructional focus, in short excerpts, with a written hand-out
to help focus students' viewing, and with prior supervisory

9

approval.  (Def.'s 56.1 Stmt ¶ 59; Barnett Decl. Ex. O.)  Dr.
Robins had not discussed the viewing of the movie with her
supervisor.  (Def.'s 56.1 Stmt ¶ 59; Barnett Decl. Ex. O.)  Dr.
Robins said that she "didn't remember all that profanity" and
that the only time she saw the movie was four years ago.
(Def.'s 56.1 Stmt ¶ 59; Barnett Decl. Ex. O.)   Principal
Phillips expressed concern that Dr. Robins had not previewed the
movie to screen it for content that would possibly send
inappropriate messages to adolescents.  (Def.'s 56.1 Stmt ¶ 59;
Barnett Decl. Ex. O.)  Dr. Robins claims that she had previously
been given permission to show the PG-13 rated movie "GATTACA" to
the ninth grade class.  (Pl.'s Stmt ¶ 48.)

     During this same April 6, 2006 meeting, Principal Phillips
also addressed concerns that she had with Dr. Robins' lesson
plan for the April 4, 2006 class.  (Def.'s 56.1 Stmt ¶ 57;
Barnett Decl. Ex. O.)   Principal Phillips told Dr. Robins that
her "lesson plan was unacceptable by any standard" in that it
only "listed a vague series of steps."  (Def.'s 56.1 Stmt ¶ 58;
Barnett Decl. Ex. O.)   Principal Phillips offered Dr. Robins a
two-week period to develop her lesson plans, but Dr. Robins
responded that she did not want or need the help and that she
felt as though she was being harassed.  (Barnett Decl. Ex. O;
Pl.'s Stmt ¶ 49.)

     On May 9, 2006, Principal Phillips conducted a classroom

observation of Dr. Robins' Living Environment class.  (Def.'s
56.1 Stmt ¶ 60; Barnett Decl. Ex. P.)  In her observation
report, Principal Phillips commended Dr. Robins for using varied
instructional tools and for her easy rapport with the students.
(Def.'s 56.1 Stmt ¶ 61; Barnett Decl. Ex. P.)  However,
Principal Phillips said that she was concerned with the lack of
academic rigor in the lesson.  (Def.'s 56.1 Stmt ¶¶ 61-62;
Barnett Decl. Ex. P.)  Principal Phillips ultimately found that
the lesson was "unsatisfactory."  (Def.'s 56.1 Stmt ¶ 60;
Barnett Decl. Ex. P.)

Dr. Robins received an overall "unsatisfactory" rating on
her Annual Professional Performance and Report for the 2005-2006
school year.  (Def.'s 56.1 Stmt ¶ 63; Pl.'s Stmt ¶ 65; Barnett
Decl. Ex. Q.)  The report noted that "[t]here are serious
concerns about Ms. Robins' planning and delivery of rigorous
instruction.  In addition, her inattention to physical
conditions, procedures and care of equipment is problematic."
(Barnett Decl. Ex. Q.)  The report was supported by the two
unsatisfactory formal observations in November 2005 and May
2006, the unacceptable planning and use of video during the
April 2006 informal observation, and the December 2005 letter
regarding the laptop thefts.  (Barnett Decl. Ex. Q.)

Dr. Robins appealed her "unsatisfactory" rating.  (Def.'s
56.1 Stmt ¶ 65; Pl.'s Stmt ¶ 66.)  However, the Chancellor's

Committee for the New York City Board of Education denied her appeal and found the rating was "sustained as a consequence of failure to adhere to security protocols and insufficient growth as a teacher in spite of a plethora of assistance that was provided."  (Barnett Decl. Ex. R.)

After the 2005-2006 school year, Dr. Robins left RKA and accepted a teaching position at Bronx Technical High School and remained there for one year.  (Barnett Decl. Ex. B at 177-78.)  Following this position, Robins began work at Public School 129 as a Data Specialist.  (Barnett Decl. Ex. B at 178.)  Dr. Robins retired from the Department of Education in June 2008.  (Barnett Decl. Ex. B at 179.)

On November 6, 2006, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation based on race and age.  (Pl.'s Stmt Ex. 1; Barnett Decl. Ex. B at 177; Barnett Decl. Ex. S.)  On March 2, 2007, the EEOC issued the plaintiff a right to sue letter and informed her that its review failed to indicate that a violation of Title VII or the ADEA had occurred.  (Def.'s 56.1 Stmt ¶ 75; Pl.'s Stmt Ex. 2; Barnett Decl. Ex. T.)  On May 4, 2007, the plaintiff filed this action.

III

The defendant moves for summary judgment on all of the plaintiff's claims.  The defendant argues that the plaintiff's Title VII and ADEA claims concerning events that occurred prior to October 23, 2005 are time barred, and that the plaintiff's claims of race or age discrimination, retaliation, and hostile work environment should be dismissed because no reasonable fact finder could find in favor of the plaintiff or those claims.

As an initial matter, the defendant argues that the plaintiff's Title VII and ADEA claims involving discriminatory acts that occurred before October 23, 2005 are time barred.  The plaintiff has not responded to this argument.  Title VII and the ADEA require that a charge of discrimination be filed with the EEOC within 300 days after the allegedly unlawful employment practice occurred.  See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(b); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Here, the plaintiff filed her complaint with the EEOC on August 19, 2006.  Only those acts that occurred within 300 days before August 19, 2006 are actionable, and therefore, the plaintiff's Title VII and ADEA claims arising from any allegedly discriminatory acts prior to October 23, 2005, including the plaintiff's complaint about the 2005

"unsatisfactory" rating, are time barred and must be dismissed for this reason.

In addition, the facts admitted by the plaintiff in connection with the delayed report of a student's allegation of unconsented sex in April 2005 would have been a sufficient, non-discriminatory reason for the plaintiff's unsatisfactory rating. Thus, on the merits, any claim of discrimination based on the 2005 unsatisfactory rating should be dismissed.

## IV

The ADEA makes it unlawful for an "employer" "to discharge any individual" who is at least forty years of age "because of such individual's age." 29 U.S.C. §§ 623(a), 631(a). Title VII of the Civil Rights Act of 1964 makes it "an unlawful practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

To establish a prima facie case of employment discrimination under Title VII and the ADEA, a plaintiff must generally show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for her

position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); James v. New York Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000); see also Grant v. Pathmark Stores, Inc., No. 06 Civ. 5755, 2009 WL 2263795, at *5 (S.D.N.Y. July 29, 2009).

If the plaintiff establishes a prima facie case of employment discrimination, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for its actions. See St. Mary's Honor Ctr., 609 U.S. at 506-07; McDonnell Douglas, 411 U.S. at 802-03; James, 233 F.3d at 154; see also Grant, 2009 WL 2263795, at *5. After the defendant articulates a legitimate reason for the action, the plaintiff, to succeed, must demonstrate that the proffered reason is pretextual. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981); see also Darrell v. Consol. Edison Co. of New York, Inc., No. 01 Civ. 8130, 2004 WL 1117889, at *8 (S.D.N.Y. May 18, 2004). To meet this burden, the plaintiff must demonstrate that (1) the proferred reasons are false and (2) the real reason was unlawful discrimination. See James, 233 F.3d at 154; Darrell, 2004 WL 1117889, at *8.

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253; see also Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 143 (2000); Darrell, 2004 WL 1117889, at *8.  The Court of Appeals for the Second Circuit has instructed that in determining whether the plaintiff has met this burden, a court is to use a "case by case" approach that evaluates "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." James, 233 F.3d at 156 (quoting Reeves, 530 U.S. at 148-49); see also Darrell, 2004 WL 1117889, at *8.  Although summary judgment must be granted with caution in employment discrimination actions "where intent is genuinely in issue, . . . summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers, 43 F.3d at 40; see also Grant, 2009 WL 2263795, at *5.

The plaintiff has failed to present evidence from which a reasonable jury could find discrimination on the basis of race or age.  She has not alleged facts to satisfy the third and fourth prongs of the McDonnell Douglas test because the facts alleged do not support her claim that she suffered an adverse

employment action or that there was a causal connection between any alleged adverse employment action and discrimination.

To allege an adverse employment action, a plaintiff must demonstrate that she was subjected to a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000). Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004)(quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

The plaintiff did not experience an adverse employment action concerning her two unsatisfactory annual evaluations, her receiving unsatisfactory classroom observations, or her receiving criticism of her performance by Principal Phillips and Assistant Principal Anthony Tamalonis. See, e.g., Weeks v. New York State Div. of Parole, 273 F.3d 76, 86 (2d Cir. 2001), abrogated on other grounds by, Morgan, 536 U.S. at 108-14 (2002) (holding that a notice informing an employee of incompetence and a "counseling memo" concerning the employee's conduct, without any allegation of negative ramifications for the plaintiff's job

conditions, could not constitute an adverse employment action);
Sanders, 361 F.3d at 756 (holding that jury could reasonably
find that a negative evaluation was not an adverse employment
action where plaintiff had offered no proof that the "evaluation
had any effect on the terms and conditions of her employment").
Additionally, all of the plaintiff's other complaints fail to
rise to the level of an adverse employment action including that
the school did not automatically have African-American History
month events, that there were frequent observations of her class
or that she felt she was being spoken to in a "nasty" way.

The plaintiff's alleged facts show that she had
disagreements with the DOE over their criticisms and assessments
of her performance, but this, without more, is not an adverse
employment action.  See, e.g., Valentine v. Standard & Poor's,
50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999), aff'd, 205 F.3d 1327
(2d Cir. 2000) ("Plaintiff's subjective perception that he
received poorer performance reviews than he deserved does not
constitute [] adverse employment action . . . ."); Reilly v.
Metro-North Commuter R.R. Co., No. 93 Civ. 7317, 1996 WL 665620,
at *9 (S.D.N.Y. Nov. 15, 1996).  Despite the unsatisfactory
evaluations and observation reports, the plaintiff remained a
high school teacher, employed by the DOE, until she voluntarily
retired in July 2008.  The plaintiff has presented no evidence
that she suffered an adverse employment action.

The plaintiff has also failed to satisfy the fourth prong of the McDonnell Douglas test by failing to show that any of the actions that she encountered occurred under circumstances giving rise to an inference of discrimination.

Circumstances contributing to a permissible inference of discriminatory intent may include replacing an employee with an employee not in the protected class; the employer's criticism of a plaintiff's performance in ethnically degrading terms; its invidious comments about others in the employee's protected group; the more favorable treatment of employees not in the protected group; or the timing of an adverse employment action. See Chambers, 43 F.3d at 37.

In this case, the plaintiff has failed to offer any direct or circumstantial evidence of racial or age discrimination. During her testimony, she only offered that she believed she was discriminated against because of a "general overall feeling" at the school.  (Barnett Decl. Ex. B at 122.)

Regarding age discrimination, the plaintiff offered no evidence and could not recall at her deposition any statements being made concerning her age.  (Barnett Decl. Ex. B at 208.)

Regarding race discrimination, the only allegedly racial comments do not suggest racial animus.  The plaintiff claims that Assistant Principal Tamalonis made discriminatory statements about her race when he said that she should be a role

model for the students, and when he suggested in his critique of her lesson that she incorporate more "rigor," which the plaintiff argues is a discriminatory code word. (Pl.'s Stmt ¶ 38; Barnett Decl. Ex. B at 203-04.) In addition, the plaintiff alleges that the defendant acted discriminatorily because she "had to lobby to get African-American history month in the school." (Barnett Decl. Ex. B at 120.)

The Court of Appeals has explained that "the more remote and oblique the remarks are in relation to the employer's [alleged] adverse action, the less they prove that the action was motivated by discrimination." Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007); see also Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 n.2 (2d Cir. 2001) (characterizing remarks as "stray" where they were "unrelated to" the plaintiff's alleged adverse employment action). The comments that the plaintiff cites to support her discrimination claim are unrelated to any alleged adverse employment action, are not related to race or age, and do not suggest that the supervisory employees of DOE were motivated by discriminatory animus. See Richardson v. Newburgh Enlarged City Sch. Dist., 984 F. Supp. 735, 744 (S.D.N.Y. 1997) ("Simply because (1) some teachers [and administrators] had complaints about [the plaintiff], and (2) [the plaintiff] is African-American, does not impel the conclusion that (3) those [school

officials] had misgivings about [the plaintiff] because she is African-American. This is the type of groundless speculation that summary judgment is designed to root out.").

The plaintiff also challenges her unsatisfactory ratings, but there is no evidence that the ratings occurred under circumstances giving rise to an inference of discrimination.  In fact, there were apparent reasons for the unsatisfactory ratings.  (See Barnett Decl. Exs. I, K, L, O, P, and Q.)  For example, in 2005, the plaintiff failed to report a situation where a student asked her about an incident of unconsensual sex, giving rise to an inference of rape.  (See Barnett Decl. Ex. F.) In 2006, she was observed in class on numerous occasions and the reviews were unsatisfactory.  (See Barnett Decl. Exs. K, O, and P.)  She also had school equipment, for which she was responsible, stolen on three occasions.  (Barnett Decl. Exs. L and Q.)  The undisputed facts establish that the plaintiff exhibited poor performance and judgment.

Moreover, the plaintiff herself offered non-discriminatory reasons why she believed her supervisors did not like her.  The plaintiff claims that Principal Phillips had a difficult relationship with the plaintiff because Principal Phillips and the plaintiff had competed for the same jobs and Principal Phillips was allegedly envious because the plaintiff was getting a doctorate.  (Barnett Decl. Ex. B at 125-26, 128.)

Even if the plaintiff had made a prima facie case, the defendant came forward with non-discriminatory reasons for the actions taken, and the plaintiff did not show the reasons were false or were a pretext for discrimination.  Therefore, the defendant's motion for summary judgment dismissing the plaintiff's Title VII and ADEA discrimination claims is granted. See, e.g., Paulose v. New York City Dep't of Educ., No. 05 Civ. 9353, 2007 WL 1371517, at *6-8 (S.D.N.Y. May 10, 2007); Thompson v. City of New York, No. 98 Civ. 4725, 2002 WL 31760219, at *2-5 (S.D.N.Y. Dec. 9, 2002).

## V

Both Title VII and the ADEA prohibit an employer from retaliating against an employee for complaining of employment discrimination prohibited by Title VII or of employment discrimination on the basis of age.  See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  "[T]he same standards and burdens apply to claims under both statutes." Kessler v. Westchester County Dept. of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006). Retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework. Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).  To establish a prima facie case of retaliation, the plaintiff must show that (1) she

engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took an employment action disadvantaging the plaintiff; and (4) a causal connection exists between the alleged adverse action and the protected activity. See Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 123 (2d Cir. 2008); Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006); see also Allen v. J.P. Morgan Chase & Co., 06 Civ. 8712, 2009 WL 857555, at *12 (S.D.N.Y. Mar. 31, 2009).

With respect to the first element, participation in protected activity, the plaintiff is not required to establish that the conduct she opposed was actually a violation of Title VII or the ADEA, but only that she possessed a "good faith, reasonable belief that the underlying employment practice was unlawful" under those statutes.  Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (citing Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)) (internal quotation marks omitted).

With respect to the second element, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."  Galdieri-

Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

The plaintiff fails to satisfy either the first or second elements of a prima facie case of retaliation.  First, she was not involved in protected activity.  The plaintiff alleges that the defendant retaliated against her because she criticized the principal for, what the plaintiff described as, the chaotic opening of the 2005-06 school year.  (See Barnett Decl. Ex. B at 184.)  The plaintiff claims that she was retaliated against for verbally stating to colleagues and stating in department meetings that Principal Phillips should have been fired for how she handled the opening of the school year in 2005.  (See Barnett Decl. Ex. B at 183-84.)  But this is not protected activity under Title VII or the ADEA.  Protected activity specifically consists of voicing opposition to employment practices made unlawful by Title VII or the ADEA, not all criticisms of an employer by an employee.  There is no evidence here that the plaintiff opposed an unlawful employment practice.

The plaintiff fails to satisfy the second prong because there is no evidence that her employer could reasonably have understood that the plaintiff was complaining about discrimination.  There is no evidence that Principal Phillips ever heard the plaintiff's comments (see Barnett Decl. Ex. B at

24

186) and the plaintiff's comments were not directed at conduct prohibited by Title VII or the ADEA.

Finally, the plaintiff's claim fails to satisfy the fourth prong of a prima facie case of retaliation because there is no causal connection between an alleged adverse employment action and protected activity.  While the plaintiff did file a charge of discrimination with the EEOC, all of the conduct about which she complained occurred before that date, and could not be retaliatory.  Therefore, there is no causal connection.  Even if the plaintiff could establish a prima facie case of retaliation, her claim would nonetheless fail because the defendant has articulated legitimate, non-retaliatory reasons for its actions that the plaintiff has not shown to be pretextual.  Therefore, the defendant's motion for summary judgment on the plaintiff's retaliation claim is granted.


**VI**


The plaintiff alleges that she was subjected to a hostile work environment.  Although the plaintiff's Title VII and ADEA claims arising from allegedly discriminatory acts prior to October 23, 2005 are time barred, this same time-bar does not apply to her hostile work environment claims.

In Morgan, the Supreme Court held that as long as "an act
contributing to the claim occurs within the filing period, the
entire time period of the hostile environment may be considered
by a court for the purposes of determining liability." Morgan,
536 U.S. at 117; see also Patterson v. County of Oneida, 375
F.3d 206, 220 (2d Cir. 2004). The Court found that a "hostile
work environment claim is composed of a series of separate acts
that collectively constitute one 'unlawful employment practice'"
and it "does not matter, for purposes of the statute, that some
of the component acts of the hostile work environment fall
outside the statutory time period." Morgan, 536 U.S. at 117
(citing 42 U.S.C. § 2000e-5(e)(1)). Nevertheless, the
plaintiff's hostile work environment claim fails because the
plaintiff has failed to proffer sufficient evidence to support
such a claim.

To establish a prima facie case of a hostile work
environment, a plaintiff must show: (1) discriminatory
harassment that was "sufficiently severe or pervasive to alter
the conditions of the victim's employment and create an abusive
working environment," and (2) a specific basis for imputing the
objectionable conduct to the employer. Perry v. Ethan Allen,
Inc., 115 F.3d 143, 149 (2d Cir. 1997); see also Garvin v.
Potter, 367 F. Supp. 2d 548, 566 (S.D.N.Y. 2005). A plaintiff
alleging a hostile work environment "must demonstrate either

that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry, 115 F.3d at 149).

To decide whether conduct has reached this threshold, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse. Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993) (finding that relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"); see also Alfano v. Costello, 294 F.3d 365, 373-374 (2d Cir. 2002).  Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness.  Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999); see also Grant, 2009 WL 2263795, at *12.  Finally, although the Court of Appeals for the Second Circuit has cautioned that hostile work environment claims are "especially well-suited for jury determination," Schiano, 445 F.3d at 605 (internal citation omitted), "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an

27

employee's . . . protected characteristic," <u>Brown v. Henderson</u>,
257 F.3d 246, 252 (2d Cir. 2001).

The crux of the plaintiff's claim is that her supervisors
at RKA created a hostile work environment by repeatedly visiting
her classroom to evaluate her performance and by giving her
unsatisfactory reviews.  These incidents do not meet the
standard for establishing a prima facie case of a hostile work
environment.  The class visits and allegedly undeserved bad
reviews were not so severe, pervasive, and insulting as to
constitute an objectively hostile work environment and there is
nothing about those incidents which indicates that her work
environment was permeated with discriminatory ridicule.  In
fact, the plaintiff has failed to provide any evidence to
support her allegations that she was subject to a hostile work
environment.  The class visits and unsatisfactory reviews were a
consequence of the plaintiff's failing to meet the standards set
for teachers at RKA.  There is no evidence of discriminatory
comments or discriminatory physical acts against her.  Moreover,
to be actionable, any hostile environment must have occurred
because of the plaintiff's race or age and there is no evidence
of that.  There was nothing about the environment that was
hostile to the plaintiff in connection with her race or age.
<u>See, e.g.</u>, <u>Lee v. Sony BMG Music Entm't, Inc.</u>, No. 07 Civ. 6733,
2010 WL 743948, at *8-9, *11 (S.D.N.Y. Mar. 3, 2010); <u>Luongo v.</u>

St. Paul Travelers, No. 07 Civ. 11282, 2009 WL 2432374, at *4-5
(S.D.N.Y. Aug. 7, 2009). Because no reasonable jury could find
that the plaintiff was subjected to a hostile work environment,
the defendant's motion for summary judgment dismissing the
plaintiff's hostile work environment claim is granted.

## CONCLUSION

The Court has carefully considered all of the parties'
arguments. To the extent they are not dealt with above, they
are either moot or without merit. For the reasons explained,
the defendant's motion for summary judgment dismissing all of
the plaintiff's claims is **granted**. The Clerk is directed to
enter judgment dismissing the complaint and closing this case.
The Clerk should close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
          June 21, 2010

                                    John G. Koeltl
                            United States District Judge

29